**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| **STEPHANIE MACKEY, *et al.*,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | No. 3:21-cv-50283 |
| | ) | |
| **CHEMTOOL INCORPORATED, *et al.*,** | ) | The Honorable Iain D. Johnston |
| | ) | The Honorable Lisa A. Jensen |
| **Defendants,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **HOLIAN INSULATION COMPANY, INC.,** | ) | |
| | ) | |
| **Third Party Defendant.** | ) | |

**ORDER CONCERNING PROTOCOL GOVERNING THE PRODUCTION OF
ELECTRONICALLY STORED INFORMATION ("ESI")**

**I.      PURPOSE**

This Stipulated Order ("Order") will govern the preservation, collection and production of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules. The Parties each reserve the right to seek exceptions, amendments, or modifications to this Order from the Court for good cause shown.

**II.      COOPERATION**

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter.

**III.      PRESERVATION**

With respect to preservation of ESI, the Parties agree as follows:

A.      Absent a showing of good cause by the requesting Party, the Parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the Parties shall preserve all discoverable active ESI in their possession, custody, or control, except as provided in part B of this section.

B.      Absent a showing of good cause by the requesting Party, the following categories of ESI need not be preserved:

    1.      Deleted, slack, fragmented, or other data only accessible by forensics.

    2.      Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

    3.      On-line access data such as temporary internet files, history, cache, cookies, and the like.

    4.      Data in metadata fields that are frequently updated automatically, such as last-opened dates.

    5.      Back-up data that are duplicative of data that are more reasonably accessible elsewhere.

    6.      Server, system or network logs.

    7.      Data remaining from systems no longer in use that is unintelligible on the systems in use.

## IV.    EXCHANGE OF ESI-RELATED INFORMATION

Within 30 days from the date that this order takes effect, the parties shall provide the following information:

A.      The identities of those individuals - whose custodial data will be searched to located documents potentially responsive to RFPDs - this list will include the job title for each individual

and a general description of the devices and/or storage systems on which those individuals' ESI is located.  The identifications of individuals pursuant to this paragraph shall not be construed to limit the scope of discovery.

B.      The location and description of any other systems for electronic communications and ESI storage ("non-custodial sources") that will be searched or reviewed to locate potentially responsive information.  The identification of non-custodial sources pursuant to this paragraph shall not be construed to limit the scope of discovery.

C.      Applicable document retention policies.

D.      A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system, or other criteria sufficient to specifically identify the data source) that a Party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B) ("Inaccessible Data"). The failure to identify an Inaccessible Data source within the timeframe set forth above does not preclude a Party from later designating a source as inaccessible if it is determined at a later point in time that the source is inaccessible. This paragraph specifically excludes all sources identified in II (A) and (B) above.

E.      Departing custodians.  A Party who learns that an individual that they have identified, pursuant to the provisions of this section will be departing from the employment or association with the Party shall notify all other Parties of this departure within 15 days of the Legal Department's notice of the custodian's departure; if it is not possible to give 15 days advance notice due to circumstances beyond the Party's control, notice will be provided as soon as possible.

## V.      ESI SEARCH

The Parties agree to meet and confer to discuss the identification of documents responsive to a Party's Request For Production of Documents, including (i) identification of custodial and

3

noncustodial data sources and repositories containing potentially relevant ESI for collection, review and production, (ii) search terms and date filters (iii) potential use and identification of culling techniques; (iv) the identification and production of Documents and ESI from custodial and non-custodial sources that do not require the use of culling techniques; and (v) the method proposed to be used to identify and de-duplicate duplicate documents, and any exceptions to such de-duplication method(s). This meet and confer between the Parties will take place by the later of fourteen (14) calendar days following entry of this Order, or seven (7) days after the any Corporate Party is served with a first document request. The Parties will discuss search methodologies with the goal of limiting the scope of review for production, minimizing the need for motion practice, and facilitating production in accordance with the deadlines set by the Court or agreed upon by the Parties. Agreement on a search methodology does not relieve a Party of its independent obligations under the Federal Rules to conduct a reasonable inquiry and produce all relevant and responsive documents of which it is aware, unless there is a claim of privilege that would permit the document to be withheld or an objection which has not been ruled on by the Court.

    A. **Search Terms.**

    1. If a Producing Party is identifying or culling potentially responsive materials, which are not already known to be responsive, using search terms, the Parties will meet and confer about search terms in English and any other languages used in the Producing Party's documents. The Producing Party will disclose information regarding the search platform to be used, a list of search terms in the exact forms that they will be applied (i.e., as adapted to the operators and syntax of the search platform), any date filters, or other culling methods.

    2. If the requesting party believes, in good faith, that search terms that have been run are insufficient, the producing party shall test an additional set of search terms, search strings, or

queries. The parties shall meet and confer in order to attempt to reach an agreement on the additional set of search terms, search strings, or queries and/or other methodology. To facilitate a good faith meet and confer, the producing party will provide a hit report for each additional search term, search string, or query. Should the parties fail to reach agreement on any additional set of search terms to be run, they may submit the dispute to the Court for resolution.

3.     Hit Reports. In the event that a Producing Party claims burden with respect to modified and/or additional search terms proposed by the Requesting Party, the Producing Party will provide a hit report by custodian or data source in the document collection where the terms were applied, specifying the number of search hits per term, the number of documents returned by each term, and the number of documents returned by each term that are unique and not returned by any other term, as available in its processing and search tool.

B.     **Use of Technology-assisted review ("TAR")**

1.     If a Producing Party plans to use technology-assisted review ("TAR"), also known as "predictive coding," to identify or cull documents to be reviewed or produced, the Producing Party will notify the Parties in advance to discuss the TAR Protocol it is using for that type of review. By agreeing to use TAR in this action, a Party does not acknowledge or concede that they are obligated to use TAR in any other matter, including, without limitation, matters pending in any state or federal courts. Moreover, by agreeing to use TAR in this action, the Parties do not intend to waive any rights or protections pursuant to privacy, confidentiality, attorney-client privilege, attorney work product, and any other privileges, protections, or objections to discovery. The Parties preserve all such Privileges.

**VI.     ESI PRODUCTION - FORMAT**

The following provisions shall generally govern the production format for ESI and paper documents.

A.  **Document Image Format**

    1.  Paper Documents - Hard copy documents shall be produced in Group IV single-page TIFF format (black and white, 300 dpi).  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized).  If any original hard copy document has any note or attachment affixed to it, the producing party shall scan and produce copies of the original hard copy document along with all notes and attachments to it in the same manner as other documents.  If any such note or attachment obscures any information on the original hard copy document, the producing party shall also produce a copy of the original hard copy document without the note or attachment affixed in order to make the underlying information visible.  The relationship between the version of the hard copy document with the note or attachment, and the version without the note or attachment, shall be indicated by proper coding of the beginning and ending document and attachment fields (i.e. the "BegBates", "EndBates", "BegAttach", and "EndAttach" fields).

    2.  Electronic Files

        a.  All spreadsheet (e.g., Microsoft Excel, Corel Quattro, etc.) and presentation (e.g. Microsoft PowerPoint) files shall be produced as native files with TIFF placeholder images.

b. All image (e.g., .jpg, .gif), and PDF files shall be produced as native files with TIFF placeholder images where reasonably possible, unless redactions are required, in which case such files shall be produced as TIFFs.

c. All word processing (e.g. Microsoft Word) files shall be produced as TIFFs, except that if any word processing file contains track-changes, comments, or any other hidden information, the native file shall be provided in addition to the TIFFs.

d. All media files, such as audio and video files, files shall be produced as native files with TIFF placeholder images.

e. Emails shall be produced as TIFFs.

f. The parties will meet and confer on the production of other file types, such as CAD drawings, GIS data, materials and prototypes testing, etc.

3. Electronic files shall be produced with the entire family files intact; appropriate Begin Family document ID and End Family document ID numbers shall be provided. Attachments should be consecutively produced with their parent such that the bates numbers for the attachment(s) is/are directly subsequent to the parent document.

4. Production of Complete Family Groups. A document and all other documents in its attachment range, emails with attachments, files with extracted embedded OLE documents, and email or other documents all constitute family groups. If any member of a family group is produced, all members of that group must also be produced or else logged.

7

5. When a document is withheld for any reason and is part of a family of documents, its absence should be designated with a placeholder image with a corresponding production number.

6. Documents produced with TIFF images shall be named according to the Bates number of the corresponding TIFF image. Each *.tiff file should be assigned a unique name matching the Bates number of the corresponding image. All TIFF images should be provided in single-page, Group IV TIFF with a resolution of 300 DPI. Bates numbers and confidentiality designations should be electronically branded on each produced *.tiff image. These *.tiff images should be provided in a separate folder and the number of TIFF files per folder should be limited to 1,000 files and accompanied by an .opt placed in a Data folder.

B. **Document Unitization**. If hard copy documents are scanned into an electronic form, the unitization of the document and any attachments shall be maintained as it existed in the original when creating the image file. The relationship of documents in a document collection (e.g., cover letter and enclosures, e-mail and attachments, binder containing multiple documents, or other documents where a family relationship exists between the documents) shall be maintained throughout the scanning or conversion process and reflected in the proper coding of the beginning and ending document and attachment fields (i.e. the "BegBates", "EndBates", "BegAttach", and "EndAttach" fields). The Parties will make their best efforts to unitize the documents correctly. Within 14 days (or as otherwise agreed) after notice from a requesting party that a document appears to have been unitized

incorrectly, the producing party shall either explain why the unitization is correct or produce a correctly unitized replacement.

C.    **Redactions and withholding family members for reasons other than privilege.**

    1.    If a Producing Party intends to redact documents on a basis other than protection of attorney-client privilege or the work product doctrine, the Producing Party shall provide advance notice to the Requesting Party of its intention to do such redactions. Such notice shall be provided as soon as reasonably possible after discovering the issue. If the Requesting Party objects to such redactions, the parties will promptly meet and confer in an effort to resolve the dispute. If the parties are unable to resolve the dispute within five (5) business days of meeting and conferring on the issue, either party may submit the issue to the Court for resolution. The burden shall be on the Producing Party to justify the redactions.

    2.    If a Producing Party intends to withhold family members of a document that is being produced on any basis other than attorney-client privilege or the work product doctrine, the Producing Party shall provide advance notice to the Requesting Party of its intention to withhold such documents. Such notice shall be provided as soon as reasonably possible after discovering the issue. If the Requesting Party objects to the withholding of the documents, the parties will promptly meet and confer in an effort to resolve the dispute. If the parties are unable to resolve the dispute within five (5) business days of meeting and conferring on the issue, either party may submit the issue to the Court for resolution. The burden shall be on the Producing Party to justify the withholding of family members otherwise subject to production.

D.    **Privileged Documents**

1.      Breaking family relationship - when a document is withheld for privilege and is part of a family of documents, its absence due to privilege should be designated with a placeholder image with a corresponding production number.

2.      Redacted items must be imaged and OCR'd after redaction, in order to provide searchable text.

3.      If a native file needs to be redacted, it will be produced in redacted form as an imaged document, except that Spreadsheet files requiring redaction, including without limitation Microsoft Excel files, will be redacted natively.

4.      Other than as permitted by this Order, no redactions for relevance may be made within a produced document or ESI item. Any redactions shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted and the basis for the redaction, and a metadata field shall indicate that the document contains redactions and the basis for the redaction (e.g., "A/C Privilege"). Where a responsive document contains both redacted and non-redacted content, the Parties shall produce the remainder of the non-redacted portions of the document and the text/OCR corresponding to the non-redacted portions.

5.      Other Documents. All TIFF images of redacted native files shall be processed to show and reveal all comments, revision marks, speaker notes, or other user-entered data which are visible in any view of the document in its native application. Where possible, any occurrences of date/time auto-field items, including in headers and footers, will be removed and replaced with the term AUTODATE to prevent the current date from being printed. Email header

information (e.g. date, subject line, etc.) should not be redacted unless it is independently privileged. The production of a document in a redacted form does not affect the Parties' obligation to timely assert and substantiate the assertion of privilege over the content in a privilege log. The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the TIFF image is not reasonably usable.

E. **Color**. Documents containing color need not be originally produced in color. However, if an original document contains color necessary to understand the meaning or content of the documents, the producing Party shall honor reasonable requests for either the production of an original document for inspection and copying or production of a color image of the document. The producing Party shall then reproduce such Document(s) and/or ESI in color 24-bit JPEG format or native format.

F. **De-duplication**.

The Parties shall make reasonable efforts to de-duplicate ESI. ESI produced by the Parties shall be globally de-duplicated across all collected custodial and non-custodial sources. Documents are considered exact duplicates if a document family or stand-alone file has a matching MD5 or SHA-1 hash value as compared against the same document type (i.e., family or stand-alone file). Hash values of emails will be calculated on the concatenated values of at least the following fields: From, To, CC, Subject, Body, and the binary streams of all attachments. The names of all custodians and non-custodial sources who were in possession of a document prior to deduplication will be populated in the ALL CUSTODIANS metadata field. The original file paths of a document prior to deduplication will be populated in the ALL FILE PATHS metadata field.

G. **Email Threading**.  No email may be withheld from production or not logged for privilege because it is included in whole or in part in a more inclusive email, although Parties may use email threading for their own internal review and other internal processes.

H. **Production Numbering**.

Bates numbering should be consistent across the production, contain no special characters, and be numerically sequential within a given document. If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted with a placeholder. Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached. In addition, wherever possible, each *.tiff image will have its assigned Bates number electronically "burned" onto the image.

I. **Native File Production**. Native file production numbering.  Any file produced in native file format shall be given a file name consisting of a unique Bates number and, as applicable, a confidentiality designation; for example, "ABC00000002_Confidential." For each native file produced, the production will include a *.tiff image slipsheet indicating the production number of the native file and the confidentiality designation, and stating "File Provided Natively." To the extent that it is available, the original document text shall be provided in a document-level multi-page UTF-8 with BOM text file with a text path provided in the *.dat file; otherwise the text contained on the slipsheet language shall be provided in the *.txt file with the text path provided in the *.dat file. Native files will be produced in a separate folder on the production media. Where redaction makes production of native-format files other than spreadsheets infeasible, the Parties will confer to determine a reasonably usable form for the production.

1. For each document produced in native format, a HASH value shall be provided for each document and included with the production in the form of a cross-reference file (.csv or .dat) containing the metadata fields (see parag. j).

2. If a file produced in native format is designated as confidential, the Production Media on which this file is produced must be labeled appropriately.

J.    **Production Media**.  All productions shall be made by secure file transfer.  If a receiving Party requests their production on CD-ROM, DVD, or external drive, the Parties shall cooperate and the producing Party shall honor the request if reasonable.  If a producing Party cannot make a production via secure file transfer, it must notify the receiving Party and the Parties shall cooperate to identify an alternative requested media.  The secure file transfer or other production media should identify: (1) the producing Party's name; (2) the production range; (3) the production date; and (4) a statement of whether the file transfer or media contains information that is subject to a Protective Order or confidentiality designation.

K.    **Load File Formats.**  ESI will be produced with a standard Concordance (*.dat) load file format and an image load file that is in .OPT format.  The Concordance (*.dat) load file shall be provide with UTF-8 encoding.

L.    **Meta-Data, Searchable Text and Other Field information**.  The producing Party shall use methods of collection and processing that preserve the integrity of document metadata. The metadata fields detailed in Exhibit A should be produced for each document to the extent that such information is available, or, in the case of metadata that is created during processing such as Bates numbers, created, at the time of collection and processing, except that if a field contains privileged information, that privileged information may be redacted and noted in a corresponding privilege log.

The metadata listed in Exhibit A shall be produced with a standard Concordance (*.dat) load file format. Images shall be produced with an image load file that is in .OPT format. The Concordance (*.dat) load file shall be provided with UTF-8 encoding.

1. Searchable Text/OCR - A producing Party shall produce full text extracted from the electronic files, accompanied by a load file. Full text shall include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden and very hidden worksheets, slide, columns and rows, as available. Text extracted from emails shall include all header information that would be visible if the email was viewed in Outlook including: (1) the individual to whom the communication was directed ("To"), 2 the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), and (5) the data and time of the email. For redacted documents, full text consisting of OCR will be provided. The .txt/OCR will be provided in document level, in a Fulltext folder, with the docid (beginning bates number) and filepath location of the text provided in the .dat (located in the Data folder).

2. OCR for Scanned Hard Copy Documents. The producing party shall provide for each document an appropriately formatted text file (.txt) of OCR text, named to match the first Bates number of the document. Text files shall be provided in a "Text" folder. If a document is redacted for privilege, the text file shall not contain the text of the redacted portions. If a Receiving Party notifies the producing party that a document's OCR text is of poor quality, the producing

party will use reasonable efforts to provide a replacement file of better quality or alternatively explain why it is unable to do so.

M. **Confidentiality Designations**. The Producing Party is responsible for producing all documents with the Confidential designations pursuant to the Stipulation For Confidentiality Order entered as an Order of the Court in this case on 12/1/2021.

N. **Production of Other Electronic Documents**. The Parties will use reasonable efforts and standard industry practices to address Documents that present imaging or form production problems (including encrypted and/or protected files identified during the processing of ESI) ("Exception Files"). The Parties will meet and confer regarding procedures that will be used to identify, access, and process Exception Files. In the event that the Parties cannot reach agreement on the handling of Exception Files through the meet and confer process, the matter may be submitted to the Court for determination.

P. **Family Relationships**. A producing party shall preserve family relationships (the associations between and among a parent document and its attachments) for hard copy documents. A "parent" document in a production set shall be followed immediately by its "child" or "children." Notwithstanding the foregoing, a document that is unitized at its lowest binding element (e.g., letter with stapled or clipped attachments) may be scanned as one document, in which case it will be noted by begin and end Bates numbers.

Q. **Mobile and Handheld Device Documents and Data**. If responsive data that can reasonably be extracted and produced in the formats described herein is identified on a mobile or handheld device, that data shall be produced in accordance with the generic provisions of this protocol. To the extent that responsive data identified on a mobile or handheld device is not susceptible to normal production protocols, the Parties will meet and confer to address the

identification, production, and production format of any responsive documents and data contained on any mobile or handheld device.

        R.      **De-NISTing**.  Electronic files will be De-NISTed, removing commercially available operating system and application file information contained on the current NIST file list

        S.      **Embedded Files**. Embedded files, except for images embedded in emails, are to be produced with family relationships preserved.  Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded and values in the "BegAttach" and "EndAttach" fields to indicate their family.  Images embedded in emails shall not be produced separately, except that a receiving party may request the separate production of any specific image embedded in an email, and the producing party shall produce that specific embedded image unless good cause can be shown for refusing to produce the embedded image.

        T.      **Extracted Text and OCR**. Each document, whether produced in Native or in TIFF format, and whether originally existing in electronic or in hard copy, shall be produced with extracted text or OCR, as described herein.

        U.      **Extracted Text**. (Emails, Unredacted Native ESI, and Redacted Spreadsheets). All email, un-redacted ESI, and redacted spreadsheets produced as native files, should be provided with complete document-level extracted text files. Extracted text shall include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden and very hidden   worksheets, slides, columns and rows, as available from NUIX. Text extracted from emails shall include all header information that would be visible if the email was viewed in Outlook including: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and

blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), and (5) the date and time of the email,.

     V.    **OCR (Redacted Native ESI, Hard Copy Documents)**. In the event a document, other than spreadsheets, e.g., Excel files, contains text that is to be redacted, Optical Character Recognition ("OCR") text files should be provided for any un-redacted portions of the documents. Document-level OCR text files shall also be provided for all hard copy scanned documents. OCR software must be set to the highest quality setting for any previously unscanned paper documents, and reasonable quality control measures shall be used to ensure that the integrity of scanned copies of previously unscanned paper documents are preserved for OCR (e.g., pages are not angled or skewed, text is not blurred or obscured, etc.). Documents containing foreign language text must be OCR'd using the appropriate settings for that language, (e.g., OCR of Asian language documents must properly capture the relevant Asian characters). Settings such as "auto-deskewing" and "auto-rotation" must be turned on during the OCR process to maximize text recognition on any given page.

     W.    **Format of Extracted Text and OCR**. The extracted full text and/or OCR text for all deliverables should be in separate document-level, UTF-8 with BOM encoded TXT files provided in a separate folder. The number of TXT files per folder should be limited to 1,000 files.

     X.    **Errors in Production**. Should there be any errors in the form or format of the production of documents, for example, load files which do not correctly load the documents or the metadata associated with the documents, or files which are unable to be opened and loaded due to errors or glitches in the preparation or transmission of these documents, the receiving party shall notify the producing party and the parties shall promptly meet and confer to resolve the matter.

**VII. EXCEPTIONS TO PROTOCOL**

If the forms of production allowed by this protocol present an undue burden for a producing Party, the parties shall meet and confer to determine whether such an undue burden exists, and if so, agree on a reasonable, alternative form of production. Any Party may file a motion to seek individual relief from this protocol.

## VIII. PROCESSING OF NON-PARTY DOCUMENTS

A. A Party that issues a non-party subpoena ("Issuing Party") after this Order is agreed to must include a copy of this Order with the subpoena and request that the non-Party produce documents in accordance with the specifications set forth herein.

B. The Issuing Party is responsible for producing to all other Parties any document(s) (including metadata) obtained pursuant to a subpoena to any non-Party in the form in which the document(s) was/were produced by the non-party. To the extent practical given the data volume and load time, productions by a non-party should be produced by the Issuing Party to all other Parties within fourteen (14) calendar days of the non-party's production to the Issuing Party.

C. If the non-Party production is not Bates Numbered by the Non-Party Producer, prior to any Party reproducing the Non-Party Documents, the Parties will meet and confer to agree upon a format for designating the documents with a unique Bates Number prefix.

D. For the avoidance of doubt, nothing in this Order is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or non-parties to object to a subpoena.

## IX. PRIVILEGE LOGS

The Parties will provide a log as set forth below of all documents withheld due to privilege, work product protection, or other privilege consistent with Fed. R. Civ. P. 26. These logs shall be

provided on a rolling basis, with the privilege log for each production of documents being due 45 days after the date of production. These logs shall be produced in Excel format.

A. The Parties agree that the following privileged communications or documents need not be included in a privilege log when the date of the communications is after June 14, 2021: (a) work product of legal counsel who have entered appearances in this case and their legal teams; (b) any communications including legal counsel who have entered appearances in this case and/or their legal teams;

B. The privilege log shall set forth the privilege or protection relied upon and specify separately for each document the following to the extent such information is available from the metadata for the document:

1. Bates-number range, or if no Bates-number range, a unique identifier;

2. Family relationship, if applicable (i.e. identification of parent emails and all attachments);

4. The name(s) of the author(s);

5. The names of all addressees and recipients, including copies ("ccs") and blind copies ("bccs");

6. The subject line of the email, if applicable,

7. The document date;

8. An indication of whether the document has been produced in redacted form or withheld in its entirety; and

9. The privilege designation (attorney-client; attorney work product; joint defense)

10. Privilege Description – A privilege description for the document/communication sufficient for the requesting party to determine why the document is privileged.

C. Attachments to emails shall be logged as separate documents on the log, with family relationships identified. A party shall only be required to include one entry on the privilege log to identify each family of non-email files that are withheld in their entirety for privilege (parent document that has embedded objects or attachments).

D. Attorneys or their staff must be identified on the log with an asterisk (or similar notation).

E. Where multiple email messages are part of a single chain or "thread", a party is only required to include on a privilege log the most inclusive message ("Last In Time Email") and need not log earlier, less inclusive email messages or "thread members" that are fully contained within the thread, provided that the log entry includes the names of the authors, addressees, and recipients (including copies and blind copies) for all thread members (i.e., not limited to the last message in the thread), that the description of the thread include the factual bases sufficient to support the claim of privilege for each thread member over which the privilege is asserted, and that the log entry include the privilege designation applicable to any thread members. This inclusive email and any unique attachments found in the thread which a party claims is entirely privileged may be logged in a single entry. For the avoidance of doubt, an email chain will only be treated as a single thread if it consists of the same participants throughout the message; if participants are added or removed in the course of a chain, the emails resulting from that addition or removal will be treated as separate threads and would be the subject of a separate log entry

F.      If the requesting Party requests further information, it shall explain in writing the need for such information and identify, by Bates number or other unique identifier, each document for which it seeks this information.  Within twenty-one (21) days of such a request, the producing Party shall either (i) provide the requested information or (ii) challenge the request.  If a Party challenges a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable solution.

G.      After the receipt of a privilege log, any Party may dispute a claim of privilege.  Prior to seeking Court intervention, the Party disputing, questioning, or otherwise objecting to a claim of privilege shall provide in writing the identification of the documents for which it questions the claim of privilege and the reasons for disputing, questioning, or otherwise objecting to the privilege designation.  Within fourteen (14) days[1], the Party that designated the documents as privileged will provide a written response explaining the basis for its claim of privilege, or if applicable, de-designating documents as privileged and producing such documents in accordance with this Order. thereafter, if the Parties continue to disagree, they will then meet and confer in good faith as to the claims of privilege.  If agreement has not been reached after fourteen (14) days, the parties shall submit the dispute to the MDL Court for resolution.


_____06/27/2023_____                         _____

Date                                                              The Honorable Lisa A. Jensen

---

[1] Parties agree that, in the event a party believes it requires additional time beyond 14 days to respond to a challenge to entries on its privilege log, the parties will meet and confer on a reasonable timeframe, and if no agreement is reached, the party requesting additional time may raise it with the Court.

**Exhibit A**
**Production Specifications**

The following metadata fields associated with each electronic document will be produced, to the extent they are available. This list of metadata fields does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI or that do not exist as part of the original Metadata of the Document,

| Field Name | Field Description | Required For E-mail | Required For Non-E-mail ESI |
|---|---|---|---|
| Custodians | Name of custodian(s) (if a non-custodial source, then the name of the non-custodial source should be listed) of email(s) or file(s) produced and any de-duped file(s) not produced | X | X |
| BegBates | Beginning Bates# (including Prefix) | X | X |
| EndBates | Ending Bates# (including Prefix) | X | X |
| BegAttach | Beginning Bates number of the first document in an attachment range | X | X |
| EndAttach | Ending Bates number of the last document in attachment range | X | X |
| Attachnames | Names of each individual Attachment, separated by semi-colons | X | |
| From | From field extracted from an email message | X | |
| Author | Author field extracted from the metadata of a non-email document | | X |
| To | To or Recipient extracted from an email message – including the active directory header | X | |
| Cc | Carbon Copy ("Cc") field extracted from an email message – including the active directory header | X | |
| Bcc | Blind Carbon Copy ("Bcc") field extracted from an email | X | |

| Field Name | Field Description | Required For E-mail | Required For Non-E-mail ESI |
|---|---|---|---|
| | message – including the active directory header | | |
| Subject | Subject line extracted from an email message | X | |
| Filename | File name – Original name of file as appeared in original location. | | X |
| Filepath | File/path of the location where the item was located during the normal course of business. | X | X |
| ALL FILE PATHS | Filepath that would have been provided for each version of the document that was not produced due to de-duplication | X | X |
| ALL CUSTODIANS | The names of all custodians and non-custodial sources who were in possession of a document prior to deduplication | X | X |
| SentOnDate | Sent date of an email message (mm/dd/yyyy hh:mm:ss a format) (a given email will have either a Date Sent or Date Recvd, but not both) | X | |
| ReceivedDate | Received date of an email message (mm/dd/yyyy hh:mm:ss a format) (a given email will have either a DateSent or Date Recvd, but not both) | X | |
| CreationDate | Date that a non-email file was created (mm/dd/yyyy hh:mm:ss a format) | | X |
| ModifiedDate | The application recorded time on which the document was last modified (mm/dd/yyyy hh:mm:ss a format) | | X |
| Filesize | Size or volume of individual file | X | X |
| Pgcount | Number of pages of document produced | X | X |
| NativeLink | Relative path to any files produced in native format | X | X |
| Text Path | Relative path to any OCR/extracted text files in the production set | X | X |

| Field Name | Field Description | Required For E-mail | Required For Non-E-mail ESI |
|---|---|---|---|
| Parentmsgid | Where the item is an email which is a REPLY or FORWARD, the MSGID of the original email which was REPLIED to or FORWARDED | X | |
| HashValue | MD5 or SHA-1 hash value used to deduplicate the data | X | X |
| Confidentiality Designation | Confidentiality Designation for produced documents | X | X |
| Redaction | Identifies if a document has been redacted | X | X |
| HasRevisions | Y if a Word document with revisions, otherwise N or empty | | X |
| HasComments | Y if a Word or Excel document with comments, otherwise N or empty | | X |
| HasHiddenText | Y if a Word document with hidden text, otherwise N or empty | | X |
| HasHidden Slides | Y if a Power Point document with hidden slides, otherwise N or empty | | X |
| HasHiddenRows | Y if an Excel document with hidden rows, otherwise N or empty | | X |
| HasHiddenColumns | Y if an Excel document with hidden columns, otherwise N or empty | | X |
| HasHidden Worksheets | Y if an Excel document with hidden or very hidden worksheets, otherwise N or empty | | X |
| File extension*  *will not be populated for emails | The suffix at the end of a filename that indicates what type of file it is (*e.g.*, .ppt, .doc, .pdf) | X | X |
| Physical Location | The actual location where the Document is stored or preserved specific to its container. | | X |
| Box Number | The box number associated with archived documents. | | X |
| Social Media Platform | The social media service, website, or app the data was | | X |

| Field Name | Field Description | Required For E-mail | Required For Non- E-mail ESI |
|---|---|---|---|
|  | created on |  |  |
| Social Media Username | The username that created the data on the social media service, website, or app |  | X |
| Other Legal Matter BegBates | Beginning Bates# (including Prefix) used when produced in the other legal matter | X | X |
| Other Legal Matter EndBates | Ending Bates# (including Prefix) used when produced in the other legal matter | X | X |
| Other Legal Matter BegAttach | Beginning Bates number of the first document in an attachment range (only in emails with attachments) used when produced in the other legal matter | X | X |
| Other Legal Matter EndAttach | Ending Bates number of the last document in attachment range (only in emails with attachments) used when produced in the other legal matter | X | X |
| Other Legal Matter Short Caption | The case caption or other legal identifiable name of the other legal matter | X | X |